Argued and submitted April 8, affirmed May 29, 1991

ARKAD ENTERPRISES, INC.,
dba Quality Truck & R.V. Wash,
*Petitioner,*

*v.*

BUREAU OF LABOR AND INDUSTRIES
and Paul R. Madden, Jr.,
*Respondents.*

(07-90, 08-90; CA A65463)

812 P2d 427

Jeremy L. Fellows, Portland, argued the cause for petitioner. With him on the brief were Thaddeus Hettle and Scheminske & Lyons, Portland.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondent Bureau of Labor and Industries. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

No appearance by respondent Paul R. Madden, Jr.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

**WARREN, P. J.**

Arkad Enterprises, Inc. (petitioner) seeks review of a Bureau of Labor and Industries (BOLI) order that held that it had violated ORS 654.062(5) by discharging an employee for cooperating with an Accident Prevention Division (APD) investigation. We affirm.

Petitioner, which is owned by Richard Chala, operates a truck wash. In 1988, Paul Madden and his brother both worked for petitioner. For some time before August, 1988, Chala had been receiving complaints about the truck wash, including that wash jobs were unsatisfactory, that truck wash hours were erratic and that employees, including Madden, were rude to customers. In June or early July, 1988, Chala told Micah Hamley, who worked for petitioner in various capacities not related to the truck wash, that he was unhappy with the truck wash crew and that he wanted Hamley to manage the business. Chala said that he intended to fire the existing crew and start over. Hamley advised against it, because initially he wanted to run the operation with a crew familiar with it. Hamley became manager on July 26, 1988, when he replaced Madden's brother, who had been fired. Hamley thought that Madden resented not being promoted to manager and that he had an attitude problem, was reluctant to share information about the truck wash operation, was abusive and rude to truckers and sometimes left his duties for Hamley to do.

After his brother was fired, Madden opened the truck wash in the mornings. On August 2, 1988, an APD investigator arrived at the truck wash at about 10:00 a.m. Only Madden and one other employee were there; Hamley had not arrived. Madden accompanied the APD inspector and answered his questions until Hamley arrived around 10:30 or 10:45 a.m. Hamley told Madden to return to work. Madden said that he wanted to finish the inspection. Hamley insisted that Madden return to work, so he did.

That evening, Hamley told Chala that Madden was getting out of hand and was being "very insubordinate." He told him about the APD inspection, that Madden had accompanied the APD inspector before Hamley had arrived and that

Madden had wanted to continue participating in the inspection after Hamley arrived. He related that Madden was reluctant to return to work when Hamley told him to do so. Hamley did not tell Chala that Madden had in fact finally returned to work as directed. Hamley also told Chala that there would probably be citations issued as a result of the inspection. Chala believed that Madden had acted inappropriately in accompanying the inspector, that it was not his job to do that and that Madden should have called Chala when the inspector arrived. Petitioner had previously been cited for safety violations.

That evening, August 2, Chala decided to discharge Madden. The next day, Chala fired him, telling him that it was because of his difficulties with trucker customers and his attitude toward Hamley and the job. Although Chala and Hamley speculated about the reason for the inspection, they did not learn until after they fired Madden that the inspection was the result of Madden's brother having called APD on the day that the brother was fired.

Madden filed two complaints with BOLI, alleging that he was a victim of unlawful employment practices. BOLI found for petitioner on one complaint, and it is not before us. On the other, BOLI concluded that petitioner had violated ORS 654.062(5)(a),[1] because it had "discharged [Madden] for his participation in and cooperation with an inspection by an agent of the Accident Prevention Division * * *." Petitioner asserts that there is not substantial evidence to support that finding. ORS 183.482(8)(c).

There is no direct evidence that the discharge was because of Madden's cooperation with the APD inspector. However, "[e]vidence includes inferences." *City of Portland*

_____

[1] ORS 654.062(5)(a) provides, in part:

"It is an unlawful employment practice for any person to bar or discharge from employment or otherwise discriminate against any employee or prospective employee because * * * of the exercise of such employee * * * of any right afforded by ORS 654.001 to [ORS] 654.295 and [ORS] 654.750 to [ORS] 654.780."

OAR 839-06-040 provides, in part:

"[E]mployees interviewed by agents of APD in the course of inspections or investigations cannot subsequently be discriminated against because of their cooperation."

*v. Bureau of Labor and Ind.,* 298 Or 104, 118, 690 P2d 475 (1984).

> "The substantial evidence rule is not entirely dispositive in reviewing findings which embody inferences. An inference has two parts: a primary fact plus a deduction. The evidence directly establishes only the truth of the primary fact or facts from which an inference may be derived * * *. Rational bases may exist for more than one inference to be drawn from the same primary fact, and the factfinder (*i.e.,* the agency) has the task to decide which one to draw. The court does not substitute its judgment as to which inference should be drawn, but it must review for the existence of a rationale. The rationale is reviewed for soundness, not for conformity to judicial preference. Judicial review of an inference is thus in two stages: (1) whether the basic fact or facts are supported by substantial evidence, and (2) whether there is a basis in reason connecting the inference to the facts from which it is derived. It is a twofold review for substantial evidence and, in a sense, for 'substantial reason.' " *City of Roseburg v. Roseburg City Firefighters,* 292 Or 266, 271, 639 P2d 90 (1981). (Citations omitted.)

Thus, if a reasonable person, on the basis of the evidence in the record, could draw the inference that Madden's discharge was due to his cooperation with APD, BOLI's decision "must prevail, no matter what the court might believe from the evidence." *City of Portland v. Bureau of Labor and Ind., supra,* 298 Or at 119.

Petitioner does not challenge any of the basic facts from which BOLI drew the inference of improper discharge. It argues that the inference that Madden was discharged because he cooperated with the APD inspector is impermissible. We disagree. BOLI based its inference on the facts that, although petitioner had been unhappy with Madden and other employees for some time, it had not fired them as threatened. It fired Madden the day after he had accompanied the APD inspector on the work site and had expressed a desire to continue participating in the inspection even after the manager had arrived. BOLI inferred that Hamley's report that Madden was "getting out of hand" and "very insubordinate" flowed directly from Madden's willing cooperation with the inspector. Although BOLI's inference that the discharge was because of cooperation with APD is not compelled by the facts, it is reasonable, and we cannot disturb it. *See Miranda*

*v. Employment Division,* 71 Or App 462, 465, 693 P2d 697 (1984).

Petitioner's other assignment of error does not require discussion.

Affirmed.